# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JUANTAVIOUS MOORE,<br><br>Plaintiff,<br><br>v.<br><br>JACOB STEPHENS,<br><br>Defendant. | CIVIL ACTION NO.<br>5:17-cv-00461-TES |

## ORDER GRANTING MOTION TO DISMISS

### FACTUAL BACKGROUND

For purposes of this motion [Doc. 6], the Court assumes the following undisputed facts to be true. On May 11, 2016, Plaintiff was incarcerated at the Georgia Department of Juvenile Justice Sumter Youth Development Campus ("SYDC") in Americus, Georgia. [Doc. 1 at ¶ 7]. Plaintiff claims that while he was eating lunch in the SYDC cafeteria, Defendant, an SYDC corrections officer, aggressively approached him, handcuffed him, and escorted him out of the cafeteria. [*Id.* at ¶¶ 57, 58]. Once they were outside the building, Defendant allegedly threw Plaintiff on the ground and lifted Plaintiff's arms behind his back, breaking Plaintiff's arm. [*Id.* at ¶ 59]. Plaintiff suffered a spiral fracture of his arm and scarring to his face, and underwent surgery to repair his arm. [*Id.* at ¶¶ 61, 62]. The Georgia Department of Juvenile Justice investigated the incident and

determined that "there is sufficient evidence to support an allegation of Inappropriate Use of Physical Intervention against Captain Jacob Stephens." [Doc. 1-1 at 8-9]. As a result of the investigation findings, SYDC fired Defendant. [Doc. 1-2 at 2].

On August 31, 2017, Plaintiff sent a letter titled "Anti-Litem Notice" [sic] to Jessie Milledge, the Director of SYDC. [Doc. 9-1]. In the letter, Plaintiff's counsel informed Mr. Milledge of potential claims "against the State of Georgia, Georgia Department of Juvenile Justice/Sumter Youth Development Campus, Captain Jacob Stephens and others unknown at this time," citing O.C.G.A. § 50-21-26.[1] [*Id.* at 2]. After enumerating the facts of Plaintiff's incident with Defendant, Plaintiff's letter contains a "Liability" section that states "the only question should be finding a fair settlement value for this case." [*Id.* at 5]. The letter concludes by demanding "the full statutory limits of one-million ($1,000,000.00) dollars." [*Id.*]

Plaintiff filed this lawsuit on November 12, 2017, seeking compensatory and punitive damages under 42 U.S.C. §§ 1983 and 1988 for Defendant's alleged use of cruel and unusual punishment. [Doc. 1 at ¶¶ 1, 76]. Defendant filed his Motion to Dismiss [Doc. 6] on January 29, 2018, contending that Plaintiff "failed to exhaust administrative remedies that were available to him during his [SYDC] detention." [Doc. 6-1 at 2].

In response, Plaintiff argues that instead of following the Georgia Department of

---

[1] O.C.G.A. § 50-21-26 is part of Georgia's Tort Claims Act and provides, "No person, firm, or corporation having a tort claim against the state under this article shall bring any action against the state upon such claim without first giving notice of the claim…."

2

Juvenile Justice's formal grievance procedure, he brought "his grievance directly to the attention of the [SYDC] director," which he contends he did by mailing the August 31, 2017 "Anti-Litem Notice" letter. [Doc. 9 at 2]. Alternatively, Plaintiff argues that he may amend his complaint because he "has now completed the other available grievance process by placing the grievance form in the collection box at the Savannah Youth Detention Center [where he is now incarcerated] on or about January 30, 2018." [*Id.* at 6].

A grievance officer reviewed this latest grievance and rejected it on February 2, 2018. [Doc. 10-3 at 2]. Plaintiff appealed the rejection the same day, and the Savannah Youth Detention Center Director denied his appeal. [*Id.*] Finally, Plaintiff appealed the rejection to the Ombudsman of the Department of Juvenile Justice, who informed Plaintiff that "action has been taken and the case is now closed." [Doc. 9-3 at 2].

## CONCLUSIONS OF LAW

### A. Standard of Review.

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). Defendant bears the burden of proving that Plaintiff did not

3

satisfy the exhaustion requirement. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

> B. **Plaintiff's ante litem notice does not satisfy the exhaustion requirement of the PLRA**.

Defendant's Motion to Dismiss [Doc. 6] hinges on his contention that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), prior to filing suit. With regard to administrative remedies, the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of the available administrative remedies is mandatory, and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

At the time Plaintiff suffered his injuries, Georgia Department of Juvenile Justice Policy Number 15.2 set forth the applicable grievance procedures for SYDC. [Doc. 6-3]. The policy states that "*[t]he formal grievance process is the only process allowed for a youth to file a grievance*." [*Id.* at 3 (emphasis added)]. This single and mandatory process requires an incarcerated youth to submit a grievance form or written statement, which is reviewed by the facility's Grievance Officer. [*Id.*] The youth may appeal the Grievance Officer's decision to the facility's director, and that decision may then be appealed to the Grievance Analyst at the Department of Juvenile Justice Office of the Ombudsman. [*Id.*] Clearly, Plaintiff failed to follow this policy prior to filing his suit.

Notwithstanding this omission, Plaintiff claims that his ante litem notice to the director exhausted his administrative remedies because the policy manual also provides that "[g]rievances made by parents or guardians[2] may be mailed to the Director or deposited in a box in an area accessible to the public marked 'Director.'" [*Id.* at 4]. SYDC's Local Operating Procedures confirm this method of filing a grievance. [Doc. 6-4 at 2].

Thus, the question the Court must answer is whether Plaintiff's ante litem notice should be considered a "grievance" within the meaning of Policy Number 15.2 and SYDC Local Operating Procedures. For the reasons that follow, the Court concludes that it is not.

In Georgia, the purpose of an ante litem notice is to "ensure that the state receives adequate notice of the claim to facilitate *settlement* before the filing of a lawsuit." *Williams v. Georgia Dep't of Human Resources*, 532 S.E.2d 401, 403 (Ga. 2000) (emphasis added). Moreover, the Georgia Tort Claims Act, which Plaintiff cites as the authority for his ante litem notice [Doc. 9-1 at 2], defines a "claim" for which an ante litem notice must be served as "any demand against the State of Georgia for money only on account of loss caused by the tort of any state officer or employee…." O.C.G.A. § 50-21-22. Thus, an ante litem

---

[2] It is unclear whether Plaintiff intends for the ante litem notice to satisfy the grievance process for himself – it clearly does not since "[t]he formal grievance process is the only process allowed for a youth to file a grievance" [Doc. 6-3 at 3] – or the grievance process for parents, because it is unclear whether the letter was sent on behalf of Plaintiff or Plaintiff's parents. Counsel for Plaintiff's parents sent the letter; however, the letter also requests that the recipients "consider this correspondence *Juantavious Moore's* written 'Ante Litem Notice'…." [Doc. 9-1 at 2 (emphasis added)]. For the purposes of this Order, the Court assumes that Plaintiff intends for the letter to be a grievance submitted by his parents.

5

notice is intended to apprise the state government of demands for monetary relief and a person's intent to file suit to recover such monetary relief. The government is therefore asked to weigh the legal implications of an individual's claims and determine the existence and extent of liability and money damages.

The purpose of the grievance process, on the other hand, is the protection of administrative agency authority and efficiency. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). That is, the grievance process affords a prison facility "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Id.* As opposed to an ante litem notice, a grievance is meant to "alert prison officials to a problem, *not to provide personal notice to a particular officer that he may be sued*." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)) (emphasis added). Thus, in response to a grievance, a prison must determine if anything can be done at the administrative level to provide redress for an inmate's frustrations.

There is nothing in Plaintiff's ante litem notice that can be construed as a request for the prison to take action on the administrative level. First, the letter asserts potential "claims" within the meaning of the Georgia Tort Claims Act against the State of Georgia, which is not in the position to receive, assess, or act on grievances at the administrative level. In addition to making a full insurance policy-limit demand, the letter states that Plaintiff "is not receiving and is not eligible to receive Medicare/Medicaid/SSI. Therefore, the cost of his medical care rests with the Georgia Department of Juvenile Justice." [Doc.

9-1 at 4]. Such a statement puts the potential defendants on notice of possible liability for medical expenses. The letter also states that "we feel certain, as to liability, that the balance of any negligence or excessive force falls upon the Georgia Department of Juvenile Justice," thereby calling upon the potential defendants to make an assessment of legal liability. [*Id.* at 5]. Elsewhere, the letter warns that "if the State of Georgia denies all liability," Plaintiff's counsel "will proceed with filing a lawsuit once the time has expired on this notice," thereby implying that the state must pay money rather than providing some resolution at the administrative level. [*Id.*] Finally, the letter demands that the potential defendants provide Plaintiff's counsel with liability insurance information pursuant to O.C.G.A. § 33-3-28, which mentions discovery, defenses, and evidence and thereby suggests ongoing litigation. [*Id.*]

In sum, the ominous language of the letter clearly indicates that Plaintiff intended to place the State of Georgia on notice of a potential lawsuit which would commence upon the state's refusal to make a monetary settlement offer. Thus, the Court finds that the "Anti-Litem Notice" letter was, in form and in effect, an ante litem notice and not a grievance that would operate to satisfy the exhaustion requirements of the PLRA.

C. **Plaintiff's failure to exhaust administrative remedies may not be cured by amending the Complaint**.

In response to Defendant's Motion to Dismiss, Plaintiff completed[3] the grievance

---

[3] The Court assumes, without deciding, that Plaintiff sufficiently completed the formal grievance process.

process mandated by the policy manual and now asks the Court for leave to file an amended complaint if the Court finds – as it did in section B, *supra* – that the ante litem letter does not satisfy the PLRA exhaustion requirement. The Eleventh Circuit's decision in *Smith v. Terry*, 491 F. App'x 81 (11th Cir. 2012), controls. In *Smith*, a *pro se* prisoner filed a claim under 42 U.S.C. § 1983, which the trial court dismissed for failure to exhaust administrative remedies. *Id.* at 82. The prisoner appealed the dismissal, claiming that his supplemental complaint, which was filed after the prisoner completed the grievance process, cured his failure to exhaust. The Eleventh Circuit disagreed, finding that the PLRA requires exhaustion before a case is "brought" and therefore "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Id.* at 83. As a result, the prisoner's supplemental complaint did not cure the historical fact that the exhaustion requirement was not satisfied when suit was filed. *Id.* Here, as in *Smith*, Plaintiff failed to satisfy the exhaustion requirement when he filed the instant suit, and an amended pleading will not cure that fact. Thus, Plaintiff's complaint must be dismissed.

## **CONCLUSION**

For the reasons stated herein, Defendant's Motion to Dismiss [Doc. 6] is **GRANTED**. Accordingly, Plaintiff's Complaint [Doc. 1] is **DISMISSED**.

**SO ORDERED**, this 3rd day of May, 2018.

/S/_____
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**